IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GREGORY LAMAR BLACKMON,

      Petitioner,

v.                                CASE NO. 4:15-cv-161-WS-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, ECF No. 1. He is proceeding pursuant to an Amended Petition, ECF No. 6. The Court previously denied Respondent's motion to dismiss the case as time-barred, ECF No. 25, and this case is now before the Court on Respondent's response to the merits of the Petition, ECF No. 27. Petitioner has filed a reply, ECF No. 29, and therefore this matter is ripe for determination. Upon due consideration of the Petition, the response, the state-court record, and the reply, the undersigned recommends that the Petition be denied.[1]

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

# I. <u>State-Court Proceedings</u>

Petitioner was charged with armed robbery with a firearm. Petitioner was tried jointly with his co-defendant, Jermaine Earl. Both defendants were represented by the same defense attorney, John Eagen. The case was tried with separate jury panels for each defendant. At the conclusion of jury selection, the trial court denied Petitioner's attempt to use a peremptory challenge to strike one of his prospective jurors, Robert Chamberlain. ECF No. 20-2 at 61.

The evidence adduced at trial may be summarized as follows. Michael Moore, a manager of Sonny's BBQ restaurant on Monroe Street in Tallahassee, testified that after he closed the restaurant on August 14, 2009, he was entering his car when he was approached by three men. Moore could ascertain that two of the men were black and one was white, although they had concealed their faces. The men forced him out of his car at gunpoint and tied his hands. Moore unlocked the restaurant and turned off the alarm. He gave the men the money from the safe, which contained between $3,000-$4,000. The men then "hog-tied" Moore with wire and left. A surveillance video camera recorded the incident, and the video was played for the jury. Moore freed himself and called 911. ECF

No. 20-2 at 115-57.

The subsequent investigation and search for suspects included a dog-tracking search that led officers from the restaurant through some woods to the Cabot Lodge.  Although latent prints were recovered from the scene, no evidence regarding the identity of the prints was offered.  *Id*. at 158-89, 214-21.

Tallahassee Police Department (TPD) Investigator Vincent Boccio testified that several weeks after the robbery he was informed that Michael Chester was in custody and had information about the Sonny's robbery.  Boccio interviewed Chester, who admitted that he participated in the robbery along with Charles Green, Jermaine Earl, and Petitioner.  Green and Earl appear on the Sonny's surveillance video.  The police recovered Petitioner's cell phone in a subsequent search of his residence.  *Id*. at 189-204.

TPD Investigator Scott Cherry testified that a search of Earl's residence yielded clothing consistent with what is seen on the surveillance video as well as two cell phones.  A firearm was found in a vehicle parked in front of Earl's residence.  Cherry subsequently interviewed Petitioner after Petitioner waived his Miranda rights.  Petitioner identified the cell

phone found in his residence and stated that he almost never lets anyone else use it.   *Id.* at 221-54.

Officer Christopher Corbitt, an expert on cell phone tracking, reviewed cell phone records obtained from Earl's and Petitioner's carriers, and discussed the location of cell phone towers with respect to determining where a phone is located when a call is made.  He testified that Earl's phone was used to talk to Petitioner's phone during the time period of the robbery, and that based on tower location it was his opinion that the phones could have been in proximity to the Sonny's on North Monroe Street during the robbery.   It was extremely unlikely that Petitioner's phone would have used the cellular towers near Sonny's if Petitioner was at his home. *Id*. at 255-79.

Michael Chester, the white perpetrator by the victim, testified that he participated in the Sonny's robbery.  He testified that at the time of the trial he was in the Leon County Jail on pending criminal charges.  Prior to the robbery, Petitioner told Chester that he was planning to rob the restaurant. Chester, Green and Earl went to Sonny's to "case it out."  On the night of the robbery, Chester, Petitioner, Earl, Green and another man met at Earl's apartment.  The unidentified man either worked at Sonny's or used to work

there, and described the layout of the restaurant.  Petitioner and Earl

provided the firearms.  Chester, Earl, and Green covered their faces and

left for Sonny's in a gold Monte Carlo.  Petitioner and the "other dude" left

in a red Expedition.  Chester testified that Petitioner's role was as lookout –

"he would drive up and down . . . North Monroe, look out, tell us when the

police – if he saw any police cars and stuff."  Chester and the men in the

Monte Carlo would execute the robbery.  Following the robbery, Chester,

Green, and Earl hid in the woods.  Earl called Petitioner and Petitioner

confirmed that he was still driving and acting as lookout.  While the men in

the Monte Carlo were returning to Earl's apartment, Earl called Petitioner

again on his cell phone.  The men all met back at Earl's residence and

divided the money.  Each person, including Petitioner, received $500 or

$600.  Chester testified that he accepted responsibility for his involvement

in the robbery.  On cross-examination, Chester testified that he had not yet

entered a plea, but believed his cooperation would result in some leniency.

On redirect, Chester testified that he had been truthful with the State and

truthful during the trial.  *Id*. at 292-331.

Petitioner was found guilty as charged and sentenced as a prison

releasee reoffender (PRR) to life imprisonment.  Petitioner appealed,

arguing that the trial court erred in denying his peremptory challenge to juror Chamberlain and that his PRR sentence enhancement should have been charged in the indictment. ECF No. 20-3 at 152. The First DCA affirmed, *per curiam*, without written opinion. ECF No. 20-3 at 238.

Petitioner filed a *pro se* petition for a writ of habeas corpus alleging ineffective assistance of appellate counsel. Petitioner argued that counsel should have raised the following additional claims on direct appeal: the trial court erred in overruling a hearsay objection; his trial counsel should have stricken two additional jurors for cause; and the trial court erred by failing to advise Petitioner of the adverse consequences of joint representation. ECF No. 20-3 at 242-67. The First DCA denied the petition on the merits. *Id*. at 339.

Petitioner then sought postconviction relief pursuant to Fla. R. Crim. P. 3.850. In an amended motion filed through counsel, Petitioner raised five claims of ineffective assistance of trial counsel. ECF No. 20-4 at 24-56. Following an evidentiary hearing, at which Petitioner was represented by counsel, the trial court denied relief on each of Petitioner's claims. ECF No. 20-4 at 179-87.

Petitioner then filed the instant federal habeas petition. Petitioner

asserts the following claims: (1) the trial court erred in failing to allow

Eagen to strike juror Chamberlain; (2) appellate counsel was ineffective for

failing to appeal a hearsay issue and for failing to appeal the trial court's

failure to advise of the adverse consequences of joint representation; (3)

trial counsel was ineffective for failing to impeach Chester, failing to object

to the State's closing argument, failing to request an accomplice

instruction, failing to impeach Cherry, and failing to present alibi testimony;

(4) Petitioner's collateral counsel was ineffective for failing to appeal all

3.850 claims; and (5) cumulative error.

## II. <u>Section 2254 Exhaustion Requirement</u>

Before bringing a habeas action in federal court, a petitioner must

exhaust all state court remedies that are available for challenging his

conviction, either on direct appeal or in a state post-conviction motion.  28

U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state

courts a "full and fair opportunity" to resolve all federal constitutional claims

by "invoking one complete round of the State's established appellate

review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  To

properly exhaust a federal claim, a petitioner must "fairly present" the claim

in each appropriate state court, thereby affording the state courts a

meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999).  Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered.  *Id*.  at 1302, 1306.  A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010).  To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### III.  Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state

prisoner's application for a writ of habeas corpus based on a claim already

adjudicated on the merits in state court unless that adjudication "resulted in

a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding."  Under §

2254(e)(1), "a determination of a factual issue made by a State court shall

be presumed to be correct," and the petitioner "shall have the burden of

rebutting the presumption of correctness by clear and convincing

evidence."  "'[A] state-court factual determination is not unreasonable

merely because the federal habeas court would have reached a different

conclusion in the first instance.'" *Burt v. Titlow,* ___ *U.S.* ___*,* 134 S.Ct.

10, 15 (2013)(quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct.

841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief

only if the state court's adjudication of the merits of the federal claim

"resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the

Supreme Court of the United States." § 2254(d)(1); *see Burt*, 134 S.Ct. at

15 (standard for reviewing claims of legal error by state courts is "highly deferential").   This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights."  *Id*.   This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[2]—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on

---

[2] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

the claim being presented in federal court was so lacking in justification

that there was an error . . . beyond any possibility for fairminded

disagreement.'"  *Id*. at 15-16 (quoting *Harrington v. Richter*, 562 U.S. ___,

131 S.Ct. 770, 786–787 (2011).  "'If this standard is difficult to meet'—and

it is—'that is because it was meant to be.'" *Id*. at 16 (quoting *Harrington*,

131 S.Ct. at 786).  "We will not lightly conclude that a State's criminal

justice system has experienced the 'extreme malfunction' for which federal

habeas relief is the remedy." *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

## IV.  Discussion

### A.  Trial Court's Denial of Peremptory Challenge

Petitioner, who is black, contends that his constitutional rights were

violated when the trial court denied Eagen's attempt to exercise a

peremptory strike as to juror Chamberlain.  ECF No. 6 at 5.

The trial record reflects that when Eagen attempted to strike

Chamberlain, who is white, the State asked for a race-neutral reason.

Eagen, who is visually impaired, responded that Petitioner and Eagen's

assistant felt that Chamberlain's "demeanor" would favor the State and

therefore created doubt as to his impartiality.  Eagen stated that the

defense felt Chamberlain was "more responsive" to the State than some of

the other potential jurors.  Eagen's assistant informed him that
Chamberlain had fallen asleep while Eagen was speaking, whereas
Chamberlain had stated that he was "listening intently" when the
prosecutor asked him a question during voir dire.  The court stated that he
had not observed Chamberlain sleeping, and no one had brought it to his
attention.  The court concluded that the record did not support a
peremptory strike of Chamberlain because Eagen's objections to
Chamberlain were too vague and general.  In the court's view, "all the
jurors were fairly equally responsive" to Eagen's voir dire.   ECF No. 20-2
at 57-61.

Respondent concedes that Petitioner exhausted this claim in state
court in his direct appeal, and that the claim was denied on the merits.
ECF No. 27 at 17.  Respondent argues that the state court's denial of this
claim was not contrary to, or an unreasonable application of, federal law.
*Id*.

This Court's scope of review in habeas corpus cases is limited to
violations of federal constitutional law.  "Neither federal nor state
defendants enjoy any right under the Federal Constitution to peremptory
challenges." *United States v. Williams*, 731 F.3d 1222, 1235 (11th Cir.

2013) (citing *Rivera v. Illinois*, 556 U.S. 148, 157-58 (2009)).  In *Rivera*, the Supreme Court held that a state court's erroneous denial of a peremptory strike did not amount to a deprivation of a defendant's Fourteenth Amendment due process right and was thus subject to harmless error review.  *Rivera*, 556 U.S. at 152.  *Rivera*, as with this case, concerned a "reverse-*Batson*[3]" claim in which a Hispanic defendant used a peremptory strike to remove a black female prospective juror.  Because the defendant had already used two strikes to remove women, including a black woman, the trial court *sua sponte* raised *Batson* and required the defense to offer a race- or gender-neutral explanation for the strike.  The trial court ultimately rejected the defense's proffered reasons and the juror sat as the jury's foreperson.  Following the defendant's conviction, the state supreme court affirmed.  The court found that although the trial court erred in *sua sponte* raising *Batson* because the record did not support a *prima facie* case of discrimination, such error was harmless beyond a reasonable doubt, in light of the overwhelming evidence of guilt presented at trial.  *Id.*

The U.S. Supreme Court affirmed, holding that "there is no freestanding constitutional right to peremptory challenges," and therefore

---

[3]*Batson v. Kentucky*, 476 U.S. 79 (1986)

"the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution." *Id*. at 157. Because the challenged juror was not removable for cause, the defendant's jury "was impartial for Sixth Amendment purposes." *Id*. at 159.

In this case, the Court concludes that the record presents no ground for habeas relief on this claim. First, Petitioner has not shown that the state court misapplied *Batson* in finding that the record did not support defense counsel's proffered reasons for exercising a peremptory strike as to juror Chamberlain. The Supreme Court has explained that:

> Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful discrimination. . . .The second step of this process does not demand an explanation that is persuasive, or even plausible. At this [second] step of the inquiry, the issue is the facial validity of the . . . explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

*Purkett v. Elem*, 514 U.S. 765, 767-68 (internal quotations and citations omitted).

In this case, counsel's attempt to strike Chamberlain foundered at the second step of the *Batson* analysis because the trial court determined

that counsel's explanation was not facially valid, based upon the court's own observations during *voir dire*. ECF No. 20-2 at 59-61. "The trial judge is best placed to consider the factors that underlie" the credibility of a proffered explanation for a peremptory strike, and court's engaged in review on the basis of a "cold record" cannot "easily second-guess a trial judge's decision about likely motivation. These circumstances mean that appellate courts will, and must, grant the trial courts considerable leeway in applying *Batson*." *Rice v. Collins*, 546 U.S. 333, 344 (2006) (Breyer, J., concurring). On federal habeas corpus review, "[c]onsiderations of federalism require federal habeas courts to show yet further deference to state-court judgments," on a *Batson* claim. *Id*. Petitioner has made no showing that the state court acted unreasonably, and therefore the court's finding that Eagen's explanation for his strike was unsupported must be afforded deference.

Second, even if this Court were persuaded that the trial court erred in seating Chamberlain, such error is subject to harmless-error review if Chamberlain was otherwise qualified for juror service because there is no federal constitutional right to a peremptory challenge. On this record, the state court on appellate review could reasonably conclude that any error in

seating Chamberlain was harmless because the State's case against

Petitioner as a principal to armed robbery was strong.  *See Rivera*, 556

U.S. at 152-59.   Because Petitioner has made no showing that

Chamberlain was removable for cause, his jury was impartial for purposes

of his rights under the Sixth Amendment.  *Id*.

Thus, Petitioner has failed to show that the state court's rejection of

his reverse-*Batson* claim was contrary to, or an unreasonable application

of, federal law, or resulted in an unreasonable determination of the facts in

light of the evidence presented in state court.  *See* 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Appellate Counsel

### 1. Hearsay

Petitioner contends that his appellate counsel rendered ineffective

assistance by failing to raise as an issue on appeal that the trial court erred

in overruling a defense objection to hearsay.  The testimony at issue is

Chester's testimony that Petitioner confirmed in a phone call to Earl while

Chester was present that Petitioner was acting as a lookout during the

robbery.  ECF No. 6 at 1.   Counsel objected to the testimony as "hearsay

upon hearsay."  The trial court overruled the objection, having previously

determined that such statements were admissible under Florida rules of

evidence as statements of a party opponent and a co-conspirator.  ECF

No. 20-2 at 295-96, 328.

To prevail on claims that appellate counsel was ineffective, Petitioner

must first show that appellate counsel was objectively unreasonable in not

raising an omitted issue.  *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000).

The exercise of judgment involved in framing an appeal makes it "difficult

to demonstrate that [appellate] counsel was incompetent" under *Strickland*

for omitting a particular argument.  *Smith*, 528 U.S. at 285-86 (citing *Gray*

*v. Greer*, 800 F.2d 644, 646 (7th Cir.1986) ("Generally, only when ignored

issues are clearly stronger than those presented, will the presumption of

effective assistance of counsel be overcome")).  In assessing appellate

counsel's performance, "the Sixth Amendment does not require appellate

advocates to raise every non-frivolous issue." *Heath v. Jones*, 941F.2d

1126, 1130 (11th Cir. 1991).  Rather, "effective advocates 'winnow out'

weaker arguments even though the weaker arguments may be

meritorious." *Id*. at 1131.  When appellate counsel reviews the entire

record, thinks about various claims, and then chooses to pursue only

certain issues on appeal, counsel has not rendered ineffective assistance.

*Id*. Although a non-appealed issue might have been successful if it had

been raised, appellate advocacy must be "judged in its entirety." *Id*.

To determine prejudice in the context of appellate counsel's effectiveness, the Court must review the merits of the neglected claim or claims. *Heath*, 941 F.2d at 1132. Failure to raise a claim will not be found prejudicial unless the claim would have a reasonable probability of success on appeal. *Id*.

Under Florida law, a claim that a trial court improperly admitted hearsay evidence is reviewed for abuse of discretion. *See Elysee v. State*, 920 So.2d 1205 (Fla. 4th DCA 2006). In this case, the trial court determined that the statement fell within an exception to the state's hearsay rule. Florida law provides an exception to the hearsay rule for statements by a party-opponent and by co-conspirators when such statements are made in the course and furtherance of the conspiracy. Fla. Stat. § 90.803(18). Apart from his conclusional assertions, Petitioner has made no showing that the trial court abused its discretion in admitting the challenged statements after determining that they fell within Florida's hearsay exception. Even if the court erred, Petitioner has not demonstrated prejudice because Chester also testified that Petitioner told him he was planning to rob Sonny's, that Petitioner met with the other men

to plan the robbery, that Petitioner left in a red Expedition on the night of the robbery in his role as a lookout, and that Petitioner met with the others after the robbery to take his share of the proceeds.  The cell phone records and expert testimony corroborated Chester's account that Petitioner acted as a lookout during the robbery.

Because Petitioner has failed to show that this claim would have had a reasonable probability of success had counsel raised it on appeal, he has failed to establish any prejudice stemming from appellate counsel's failure to raise it in favor of other appellate issues.  Thus, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to, or an unreasonable application of, federal law, or resulted in an unreasonable determination of the facts in light of the evidence presented in state court.  *See* 28 U.S.C. § 2254(d).

### 2.  Adverse Consequences of Joint Representation

Petitioner contends that his appellate counsel was ineffective for failing to appeal the trial court's asserted failure to adequately inform Petitioner of the adverse consequences of joint representation.  He claims that he was "under the impression" that he would be tried by himself.  ECF No. 6 at 8.

Petitioner's claim is refuted by the trial record.  Prior to jury selection, Petitioner expressed concerns about the case having been consolidated pursuant to the State's motion.  The reason for consolidation was that identical evidence would be presented against both Petitioner and Jermaine Earl, although Earl was facing a kidnaping charge as a result of the crime, in addition to an armed robbery charge.  *See* ECF No. 20-1 at 338-40.  Petitioner expressed that the jury might hear evidence relevant to the kidnaping charge that did not apply to him, but the court, the State, and defense counsel confirmed on the record that the evidence against both defendants was identical – the actions taken against the victim on the night of the robbery were also relevant to show that Petitioner was culpable as a principal to the crime of armed robbery.  *Id.*  Counsel and the trial court affirmed that separate juries would consider the charges against each defendant.  *Id*.  Petitioner had previously executed a waiver of his right to separate counsel.  Prior to jury selection, Petitioner affirmed on the record that he agreed to joint representation by Eagen so long as two different juries were utilized.  *Id*. at 341.

Following the trial, Petitioner filed a *pro se* motion for a new trial.  At the hearing on the motion, the trial court reaffirmed that Petitioner and Earl

had waived separate representation for purposes of their consolidated trial. ECF No. 20-3 at 39.  The court observed that Petitioner and Earl had maintained their desire to be represented jointly by Eagen, provided that they each had a different jury.  *Id*. at 41.   When Petitioner asserted that he personally did not think Eagen could represent both defendants, the court stated "[a]t every stage I asked you about that and you indicated that you were confident going with Mr. Eagen as the sole attorney."  *Id*. at 77. Petitioner responded "I know, at every stage I kept saying that," until he realized the case was "reconsolidated."  *Id*.

The record reflects that the concerns raised by Petitioner to the trial court were focused on potential adverse consequences from a *consolidated trial* rather than joint representation.  As noted above, Petitioner agreed on the record that throughout the proceedings he had assented to joint representation by Eagen.  Even if the trial court erred in some way in explaining any potential adverse consequences of joint representation, Petitioner points to nothing in the record that would support a conclusion that he was prejudiced by appellate counsel's failure to raise this as an issue on direct appeal.  The record reflects that Petitioner's primary complaint in the trial court was that the defendants would be tried

by separate juries, and that is what he received.  Again, appellate counsel's failure to raise a claim will not be found prejudicial unless the claim would have a reasonable probability of success on appeal.  Petitioner points to nothing in the record that would support a conclusion that his trial was prejudiced as a result of the joint representation by Eagen and the use of two jury panels, as Petitioner requested.

Because this claim lacks support in the record, Petitioner has failed to show that this claim would have had a reasonable probability of success had counsel raised it on appeal.  Thus, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to, or an unreasonable application of, federal law, or resulted in an unreasonable determination of the facts in light of the evidence presented in state court.  *See* 28 U.S.C. § 2254(d).

## C.  *Ineffective Assistance of Trial Counsel*

### 1.  *Failure to Impeach Chester*

Petitioner contends that Eagen failed to properly impeach Chester with inconsistent statements and the fact that Chester was facing other armed robbery charges at the time of trial.  ECF No. 6 at 12.

At the evidentiary hearing on Petitioner's Rule 3.850 motion, Eagen

testified that the defense's theory was that Petitioner was not at Sonny's on the night of the robbery.  It was undisputed, however, that Petitioner's cell phone number had been traced up and down North Monroe street that night, and Petitioner had admitted his cell phone number to police. Chester had made statements to police that were inconsistent in some respects, such as whether Petitioner would act as the "getaway driver" and whether he had arranged for Chester to stay at the Rodeway Inn.   But because the defense strategy was that Petitioner was not involved, Eagen's strategy was not to focus on inconsistencies in Chester's statements that did not bear on the defense.

With respect to Chester's involvement in other robberies, his statements reflected that he was involved in a course of criminal conduct for which Petitioner was the leader in a series of robberies, and therefore Eagen determined that it was not in Petitioner's interest to question Chester regarding other crimes.  Eagen testified that "we showed the jury or hoped to show the jury that he was getting a deal and that's why he was turning . . . . The accusations against [Petitioner] could only have been countered if [he] testified."  ECF No. 20-4 at 93-119.

Based upon the trial record and the testimony at the evidentiary hearing, the state court concluded that counsel's approach was a strategy decision that did not reflect ineffective assistance of counsel or prejudice. *Id*. at 182.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

This Court's review of the record reflects that Petitioner's trial counsel was able to effectively cross-examine Chester regarding the events the night of the robbery, and highlighted Chester's motives for providing testimony favorable to the State.  Counsel's choices regarding omitted areas of cross-examination are the type of strategic decisions all defense counsel must make, and Petitioner has failed to show that counsel's decisions in this case were unreasonable in light of the defense theory and the State's evidence.

Thus, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to, or an unreasonable application of, federal law, or resulted in an unreasonable determination of the facts in light of the evidence presented in state court.  *See* 28 U.S.C. § 2254(d).

### 2.  *State's Closing Argument*

Petitioner contends that counsel was ineffective for failing to object to the State's closing argument when the State argued that Chester had been honest with the jury regarding his involvement in the robbery and that he did expect to get something in exchange for his cooperation.  The State also argued that Chester's testimony was unwavering, truthful, and that he

had accepted responsibility for the crime.  Petitioner asserts that the argument amounted to impermissible vouching.  ECF No. 6 at 14-15.

It is well-settled that improper jury argument by the prosecution violates a defendant's constitutional right to a fair trial in some circumstances.  *See, e.g., Cronnon v. State*, 587 F.2nd 246, 251 (5th Cir. 1978).  "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Davis v. Kemp*, 829 F.2d 1522, 1527 (11th Cir. 1987).  The Court applies a two-step process in reviewing such a claim: (1) the Court considers whether the argument was improper; and (2) whether any improper argument was so prejudicial as to render the trial fundamentally unfair.  *Id*. at 1526.  Thus, "'[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Id*. at 1526-27 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).  A trial is fundamentally unfair if there is a reasonable probability that but for the prosecutor's improper remarks, the outcome of the trial would have been different.  *Williams v. Kemp*, 846 F2d 1276, 1283 (11th Cir. 1988).

In rejecting this claim on postconviction review, the state court found

that the State's argument may have amounted to vouching, an improper tactic, and that an objection would have been sustained, if made.  The court also observed that Eagen had testified that, in his view, in the absence of something "very egregious" it is better not to call attention to the State's closing argument.  The court concluded that it was a reasonable strategy on counsel's part not to object.  ECF No. 20-4 at 122-23, 182-83.

In this case, even if the State's comments were improper there is no possibility that they rendered the trial fundamentally unfair, which is the required showing on habeas corpus review.  Even if, as the state court found, an objection likely would have been successful, it was reasonable for counsel to decide not to object.  Counsel thoroughly explored Chester's self-interest in testifying in his cross-examination.  In light of the trial record as a whole, Petitioner has failed to show that counsel's failure to object to closing argument caused him any prejudice.   Thus, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to, or an unreasonable application of, federal law, or resulted in an unreasonable determination of the facts in light of the evidence presented in state court.  *See* 28 U.S.C. § 2254(d).

### *3.  Ineffective Assistance Regarding Accomplice Instruction*

Petitioner contends that his trial counsel was ineffective for failing to request a jury instruction on accomplices with respect to Chester's testimony.  Petitioner contends that based on the evidence adduced at trial an accomplice instruction was the "only viable instruction."  ECF No. 6 at 17.

At the evidentiary hearing, Eagen testified that he did not request an accomplice instruction, which would have instructed the jury to use caution in evaluating a witness/accomplice's testimony.  Counsel testified that he made that decision because to do so would implicitly suggest that there was a connection between Chester and Petitioner, and the defense theory was that Petitioner had nothing to do with the robbery.  Counsel instead relied on principal and "independent act" instructions, because the defense theory was that Petitioner was not Chester's accomplice, and that Chester and the other men acted independently of Petitioner.  ECF No. 20-4 at 132.

In rejecting this claim on postconviction review, the state court concluded that Eagen's strategy was not unreasonable, in view of the defense theory.  The court further determined that Petitioner was not prejudiced by counsel's failure to request an accomplice instruction.  ECF

No. 20-4 at 183-84.

In view of the defense theory, the state court's decision rejecting this ineffective-assistance claim is not unreasonable.  Thus, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to, or an unreasonable application of, federal law, or resulted in an unreasonable determination of the facts in light of the evidence presented in state court.  *See* 28 U.S.C. § 2254(d).

### 4.  *Impeachment of Investigator Cherry*

Petitioner argues that his counsel was ineffective for failing to impeach Investigator Cherry's "false" testimony about Petitioner's statements concerning his cell phone.  Petitioner also contends that counsel was ineffective for failing to object to Cherry's testimony that Petitioner may have invoked his right to counsel during his questioning and a "subclaim" of a *Giglio* violation because Cherry testified falsely.  ECF No. 6 at 18.

During the Rule 3.850 evidentiary hearing, Eagen testified that he recalled Cherry's testimony that Petitioner told Cherry his cell phone was almost never used by anyone else.   Petitioner's postconviction counsel asked Eagen if he was aware that Petitioner was referring to a "different"

cell phone in his interview with Cherry.  The state court denied

postconviction counsel's attempt to introduce Petitioner's statement into

evidence because it had not been authenticated and was not introduced at

trial.  Eagen testified that he "listened to every piece of evidence and

reviewed every piece of evidence that was provided and attained in this

case," but did not recall the substance of that interrogation.  Eagen further

testified that he did not try to suppress Petitioner's statement based on

Petitioner asking for counsel because the statement was exculpatory to

him.  Eagen testified that in his view, if Petitioner did invoke his right to

counsel it could be interpreted "many different ways" such as that the

person no longer wanted to speak to an investigator.  ECF No. 20-4 at

135-36.   Petitioner testified that while speaking with Cherry he told Cherry

that he did not let anyone use the cell phone that he had in his car, but that

Cherry never asked him that question about the phone found in Petitioner's

residence.  *Id*. at 155.

In rejecting this claim on postconviction review, the state court

determined that Petitioner had failed to establish "that there was anything

incorrect about" Cherry's testimony.  The court concluded that Cherry's

testimony was "wishy-washy" as to whether Petitioner invoked his right to

counsel, but "apparently it was not testimony that caused any great stir."

The court concluded that it was not ineffective for counsel to fail to object

to Cherry's testimony on the grounds asserted by Petitioner, and that

Petitioner was not prejudiced.  The court further observed that Petitioner

was "actively involved" in his trial, even to the extent of providing input to

counsel during counsel's closing argument.  ECF No. 20-4 at 184-85.

This court agrees that Petitioner has failed to show that Cherry

testified "falsely" as alleged by Petitioner.  With respect to Petitioner's cell

phone, Cherry testified that Petitioner identified the cell phone found in his

residence as his own, and the trial evidence reflects that it was the cell

phone used to communicate with Earl on the night of robbery.  Cherry

testified that Petitioner waived his Miranda rights, and Cherry was

equivocal when asked whether Petitioner requested an attorney during the

interview.  He stated that "[h]e may have at the end . . . I don't remember if

he did or not."  ECF No. 20-2 at 235-36.

On this record, the state court's rejection of this ineffective-

assistance claim is not unreasonable.  Thus, Petitioner has failed to show

that the state court's rejection of this ineffective-assistance claim was

contrary to, or an unreasonable application of, federal law, or resulted in an

unreasonable determination of the facts in light of the evidence presented in state court.  *See* 28 U.S.C. § 2254(d).

### 5.  *Failure to Present Alibi Testimony*

Petitioner contends that an alibi witness, Geranoto Rosier, would have testified that he was with Petitioner and his cell phone during the robbery.  Petitioner alleges that he told Eagen's investigators about the witness but counsel did not use the witness at trial.  ECF No. 6 at 19.

At the Rule 3.850 evidentiary hearing, Eagen testified that he had no recollection of Petitioner telling him that he had an alibi witness, and that if Petitioner had an alibi witness that he wanted called for trial Eagen would have called him.  Rosier testified that Petitioner was with him on the night of the robbery, and that they drove around together while Petitioner engaged in drug deals.  He specifically recalled that Petitioner was with him at the time that the robbery would have occurred.  Petitioner testified that he told Eagen about Rosier, but Eagen said it was just "hearsay" and wouldn't matter.  Petitioner's wife also testified that she told Eagen about Rosier.  ECF No. 20-4 at 74-21, 91-152, 161, 166.

The state court found that Petitioner's and Rosier's testimony was not credible regarding whether Eagen knew about Rosier and whether

Rosier could have provided an alibi for Petitioner.  In particular, the court found that because Petitioner was so involved in his trial it was inexplicable that he would not have raised the existence of an alibi witness during the trial.  The court further found that Rosier's testimony regarding his recollection of the night of the robbery was not believable.  The court therefore found that Petitioner was not prejudiced by counsel's failure to call Rosier.  ECF No. 20-4 at 184-85.

    In the habeas corpus context, "[c]omplaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative."  *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980).   In this case, the state court evaluated Eagen's, Rosier's, and Petitioner's credibility, and found that Petitioner failed to establish that Rosier would have been an effective alibi witness. Thus, even if Eagen or his investigators knew about Rosier, Petitioner failed to show that he was prejudiced by counsel's failure to call him as a witness.  On this record, the state court's findings are more than reasonable.  Thus, Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to, or an

unreasonable application of, federal law, or resulted in an unreasonable

determination of the facts in light of the evidence presented in state court.

*See* 28 U.S.C. § 2254(d).

### D. Ineffective Assistance of Postconviction Counsel

Petitioner claims that his postconviction counsel was ineffective for

failing to raise additional claims of ineffective-assistance of trial counsel in

his Rule 3.850 proceeding and for failing to appeal all of the claims he

raised in his motion for postconviction relief.  ECF No. 6 at 19, 21.

The Respondent contends that these claims are unexhausted

because Petitioner failed to raise them in state court, and Petitioner is now

barred from returning to state court.  Therefore the claims are procedurally

defaulted and foreclosed from federal review.  ECF No. 27 at 56-57, 60-61.

In his reply, Petitioner does not dispute that these claims are procedurally

defaulted or that he can establish any cause and prejudice sufficient to

overcome the procedural default.  *See* ECF. No. 29.

Even if Petitioner had exhausted these claims, they would provide no

basis for federal habeas corpus relief.  Pursuant to 28 U.S.C. § 2254(I),

"[t]he ineffectiveness or incompetence of counsel during Federal or State

collateral post-conviction proceedings shall not be a ground for relief in a

proceeding arising under section 2254." *See also Murray v. Giarratano*, 492 U.S. 1, 8-9 (1989). Accordingly, this claim is due to be denied.

To the extent that Petitioner contends that postconviction counsel's ineffectiveness amounts to a showing of cause and prejudice for raising defaulted claims, his argument also fails. In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court considered whether ineffective assistance of counsel at an "initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding." *Martinez*, 132 S.Ct. 1315. In appropriate circumstances, *Martinez* provides prisoners cause for overcoming procedural default of an ineffective-assistance claim so long as certain narrow conditions are met. *See Trevino v. Thaler*, ___ U.S. ___, 133 S.Ct. 1911, 1918 (2013) (to overcome procedural default, petitioner must have substantial claim of ineffective assistance of trial counsel; be unrepresented or represented by ineffective counsel during state collateral review that is the initial review regarding that claim; and state law requires that an ineffective assistance claim be raised in an initial-review collateral proceeding).

Here, Petitioner sets forth a list of six ineffective-assistance claims

that he says his postconviction counsel should have raised.  *See* ECF No.

6 at 21.[4]  But Petitioner's assertion that these six claims would provide any

basis for habeas relief is wholly conclusional.  *See id*.  Such conclusional

assertions are insufficient to establish that Petitioner has a substantial

claim of ineffective assistance of counsel.

## E.   *Cumulative Error*

Petitioner contends that he is entitled to habeas relief due to the

cumulative effect of counsel's errors.  ECF No. 6 at 20.  This is not a

cognizable federal claim.  "'[T]he Supreme Court has held, in the context of

an ineffective assistance claim, that 'there is generally no basis for finding

a Sixth Amendment violation unless the accused can show how specific

errors of counsel undermined the reliability of the finding of guilt.'" *Forrest*

*v. Fla. Dept. Of Corrections*, 342 Fed. Appx. 560, 564-65 (11th Cir.

2009)(*per curiam*) (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26

(1984)); *see also Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir.

---

[4]The claims are: (1) trial counsel violated his rights by allowing Earl to hire Eagen; (2) trial counsel advised Petitioner not to testify due to his conflict of interest; (3) the "independent act" jury instruction requested by counsel was harmful and without legal basis; (4) counsel failed to investigate the fact that Green was never arrested nor charged, contrary to the trial testimony; (5) counsel failed to depose any state witnesses, thus allowing for "uncontested lies"; and (6) trial counsel allowed false evidence to be admitted because the cell phone records used at trial were Green's and not Chester's.  ECF No. 6 at 21.

2003)("Because the sum of various zeroes remains zero, the claimed prejudicial effect of their [the petitioners'] trial attorneys' cumulative errors does not warrant habeas relief.").  Accordingly, Petitioner is not entitled to relief on this claim.

## V.  Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either

party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VI.  Conclusion

For the foregoing reasons, it is respectfully **RECOMMENDED** that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254,  ECF No. 6, should be **DENIED** and a COA should be **DENIED.**

**IN CHAMBERS** this 31st day of January 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**